UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SECURITIES AND EXCHANGE
COMMISSION,

                *Plaintiff,*

– against –

JAY MAC RUST and CHRISTOPHER K.
BRENNER,

                *Defendants.*

**OPINION & ORDER**

16 Civ. 3573 (ER)

Ramos, D.J.:

    The Securities and Exchange Commission ("SEC") brings this action against Jay Mac Rust and Christopher K. Brenner for violations of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 thereunder by, among other things, fraudulently inducing approximately 29 small business owners to deposit millions of dollars with them as escrow clients as part of a sham commercial loan scheme. Compl., Doc. 1. The Court has already entered judgment as to both defendants and entered an order declaring Rust liable for disgorgement of ill-gotten gains, prejudgment interest, and a civil penalty. Docs. 37, 44, 49. Pending before the Court is the SEC's unopposed motion for an order for monetary relief against Brenner. For the reasons set forth below, the SEC's motion is GRANTED.

**I.    BACKGROUND**

    For the purposes of deciding the instant motion, the Court accepts and deems as true all allegations of the Complaint. Consent ¶ 3, Doc. 37. On May 13, 2016, the SEC brought this action against defendants, both of whom are attorneys, alleging that they had participated in a scheme to defraud investors, orchestrated by a recidivist securities violator, Individual X, and his alter ego Atlantic Rim Funding ("Atlantic"). Compl. ¶ 1, Doc. 1. During their involvement with Atlantic's scheme, defendants falsely held themselves

out as escrow agents to 29 small business owners, leading them to believe that their deposits would be used to secure small business loans. *Id.* These escrow clients deposited approximately $13.8 million with defendants from about December 2010 to March 2012. *Id.* First Rust, and then Brenner, acting as escrow agents, assured prospective clients that the funds were safe and would be used to purchase safe and liquid securities. *Id.* ¶ 2. Rust acted as the escrow agent from December 2010 until approximately August 2011, and Brenner from September 2011 until March 2012. *Id.* Instead of purchasing safe securities, defendants together directed at least $1,257,000.00 in client deposits to themselves, Individual X, and his other associates. *Id.* ¶¶ 3, 44-45, 88-92. The rest of the client funds defendants used to trade in unrated, highly speculative securities derivatives, opening new accounts with multiple broker-dealers in order to do so and misrepresenting to the broker-dealers that the money they were trading was their own. *Id.* ¶¶ 3-6, 34, 67-87. When earlier escrow clients asked for the return of their deposits, Defendants misused deposits from newer escrow clients to pay the refunds. *Id.* ¶¶ 7, 46-55, 93-97. As a result of this scheme, the escrow clients suffered more than six million dollars in losses. *Id.* ¶ 8.

Rust never responded to the Complaint and did not appear in this action. On July 13, 2016, Brenner moved to dismiss the Complaint for improper venue. Doc. 22. On January 17, 2017, the Court denied Brenner's motion to dismiss. Doc. 29. On January 31, 2017, Brenner answered. Doc. 30. On June 9, 2017, the Court entered partial judgment on consent as to Brenner. Judgment, Doc. 37. The judgment permanently restrains and enjoins Brenner from violating Section 10(b) of the Securities Exchange Act and Rule 10b-5 thereunder. The judgment further ordered Brenner to pay disgorgement of ill-gotten gains, prejudgment interest thereon, and a civil penalty pursuant to Section 21(d)(3) of the Exchange Act, with the amounts to be determined upon motion of the SEC. Judgment at 2.

On October 5, 2017, the Court entered default judgment against Rust and imposed a permanent injunction against future violations of Section 10(b) of the Securities Exchange Act of 1935 and Rule 10b-5 thereunder; disgorgement of ill-gotten gains received as a result of his violations of the federal securities laws in the amount of $160,706.79, and prejudgment interest thereon in the amount of $31,076.22; and civil money penalties in the amount of $160,706.79 pursuant to Section 21(d)(3) of the Securities Exchange Act of 1935. Doc. 44.

On October 6, 2017, the SEC moved the Court to order Brenner to disgorge his ill-gotten gains in the amount of $105,297, to pay prejudgment interest in the amount of $19,105.71, and to pay the highest available third-tier civil penalty. Doc. 47 at 2. On December 18, 2019—a two-year extension past what would have been Brenner's original deadline to submit his opposition—the Court ordered Brenner to show cause by papers filed no later than January 17, 2020,[1] why the Court should not decide the motion on the basis of the SEC's papers. Doc. 52. Brenner did not file any papers, respond in any way to the SEC's motion, or communicate with the Court. On July 27, 2020, the SEC submitted a supplemental letter following the Supreme Court's decision in *Liu v. SEC*, 140 S.Ct. 1936 (2020), which held that disgorgement awards not exceeding a wrongdoer's net profits are permissible equitable relief under 15 U.S.C. § 78u(d)(5). Doc. 58. Brenner has not opposed the SEC's motion or even responded to it in any way, even after having been directed to show cause why the Court should not decide the motion solely on the basis of the SEC's moving papers. Doc. 52.

## II. DISCUSSION

### A. Disgorgement

"[A] disgorgement award that does not exceed a wrongdoer's net profits and is awarded for victims is equitable relief permissible under § 78u(d)(5)." *Liu v. Sec. &*

---

[1] The order provides this date as January 17, 2019. Doc. 52 at 2. This was typographical error.

*Exch. Comm'n*, 140 S. Ct. 1936, 1940 (2020). "Once the district court has found federal securities law violations, it has broad equitable power to fashion appropriate remedies, including ordering that culpable defendants disgorge their profits." *S.E.C. v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1474 (2d Cir. 1996) (citations omitted). "The primary purpose of disgorgement as a remedy for violation of the securities laws is to deprive violators of their ill-gotten gains, thereby effectuating the deterrence objectives of those laws." *Id.* The district court "has broad discretion not only in determining whether or not to order disgorgement but also in calculating the amount to be disgorged," *id.* at 1474-1475, although the award may not "exceed the gains made upon any business or investment," excluding legitimate business expenses. *Liu*, 140 S. Ct. 1949-50 (internal citations and quotations omitted).

The Court has already entered judgment as to Brenner ordering that he is "permanently restrained and enjoined from violating, directly or indirectly, Section 10(b) of the Securities Exchange Act of 1934 … and Rule 10b-5 promulgated thereunder." Judgment at 1. With his consent to the entry of judgment, Brenner agreed

> that in connection with the Commission's motion for disgorgement and/or civil penalties . . . [he] will be precluded from arguing that he did not violate the federal securities laws as alleged in the Complaint . . . [and] for the purposes of such motion, the allegations of the Complaint shall be accepted as and deemed true by the Court…

Consent ¶ 3. Thus, for the purposes of deciding this motion, the Court finds that Brenner violated the federal securities laws and the entry of a disgorgement award is appropriate equitable relief.

Bank account statements show that from September 2011 to June 2012, Brenner misappropriated to himself a total of $105,297.00: $24,000.00 from escrow accounts held at JPMorgan Chase & Co. ("JMPC"), and $81,297.00 that he first transferred from the escrow accounts to another JPMC account that he controlled, and then to himself. Declaration of Tuongvy Le ("Le Decl."), ¶¶ 14-21. Brenner has not offered any evidence

4

opposing the SEC's submissions as to his payments to himself or other profit from the fraudulent scheme. Therefore, the Court orders Brenner to disgorge $105,297.00.

## B. Prejudgment Interest

"The decision whether to grant prejudgment interest and the rate used if such interest is granted are matters confided to the district court's broad discretion." *SEC v. First Jersey Sec.*, 101 F.3d 1450, 1476 (2d Cir. 1996).

Per the terms of the judgment, prejudgment interest shall be calculated from September 30, 2011, based on the rate of interest used by the Internal Revenue Service for the underpayment of federal income tax as set forth under 17 C.F.R. § 201.600(b) and 26 U.S.C. § 6621(a)(2). Judgment at 2. Courts have routinely approved the use of the IRS' underpayment rate in connection with disgorgement. *See SEC v. Drexel Burnham Lambert, Inc.*, 837 F.Supp. 587, 612 n. 8 (S.D.N.Y. 1993) (citing cases), *aff'd,* 16 F.3d 520 (2d Cir.1994), *cert. denied,* 513 U.S. 1077, 115 S.Ct. 724, 130 L.Ed.2d 629 (1995). Under 17 C.F.R. § 201.600(b), which applies to SEC administrative proceedings, "[p]rejudgment interest shall be due from the first day of the month following each such violation through the last day of the month preceding the month in which payment of disgorgement is made." Using the underpayment rate, the SEC has calculated the total amount of $19,105.71 for violations on the principal amount of $105,297.00 for the period from September 1, 2012 (rather than September 30, 2011 as set forth in the Judgment) to September 30, 2017. Le Decl., Ex. 19. Considering that judgment entered as to Brenner on June 6, 2017, Judgment at 3, the Court will not award prejudgment interest for any time after June 6, 2017. The Court therefore directs the SEC to file a brief supplemental submission showing its work calculating prejudgment interest based on the IRS' underpayment rate for the time period from September 30, 2011 to June 6, 2017. The Court will determine the amount of prejudgment interest upon receipt of the SEC's supplemental submission.

### C. Civil Penalties

"District courts have discretion in determining the appropriate amount of any penalty." *S.E.C. v. Lybrand*, 281 F. Supp. 2d 726, 729 (S.D.N.Y. 2003), *aff'd sub nom. S.E.C. v. Kern*, 425 F.3d 143 (2d Cir. 2005). The purpose of civil monetary penalties is to "punish the individual violator and deter future violations of the securities laws." *S.E.C. v. Haligiannis*, 470 F. Supp. 2d 373, 386 (S.D.N.Y. 2007) (citing *SEC v. Moran*, 944 F.Supp. 286, 296 (S.D.N.Y. 1996).

Section 21(d)(3)(A) provides that the SEC may bring an action to seek civil penalties, and the court shall have jurisdiction to impose such penalty upon a proper showing. Section 21(d)(3)(B)(i) provides that "[t]he amount of the penalty shall be determined by the Court in light of the facts and circumstances." 15 U.S.C. § 78u(d)(3). Under Section 21(d)(3) of the Exchange Act, there are three tiers of monetary penalties: "The first tier of fines applies to all securities law violations; the second provides higher maximum fines for violations that involved fraud; and the third provides the highest maximums for violations that involved fraud and 'resulted in substantial losses or created a significant risk of substantial losses to other persons.'" *S.E.C. v. Palmisano*, 135 F.3d 860, 866 (2d Cir. 1998) (citation omitted). For violations occurring after March 3, 2009 but before March 2013, the first-tier penalty for a natural person shall not exceed the greater of $7,500 per violation or the gross amount of pecuniary gain; for second-tier penalties, $75,000; and for third-tier penalties, $150,000. 15 U.S.C. § 78u(d)(3)(B)(1); 17 C.F.R. § 201.1004; Table IV to Subpart E. Factors to be considered in determining whether to impose civil penalty, and what amount, include:

> (1) the egregiousness of the defendant's conduct; (2) the degree of the defendant's scienter; (3) whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the defendant's conduct was isolated or recurrent; and (5) whether the penalty should be reduced due to the defendant's demonstrated current and future financial condition.

*Haligiannis*, 470 F.Supp.2d at 386 (citing *SEC v. Coates*, 137 F.Supp.2d 413, 429 (S.D.N.Y. 2001).

Brenner's violations support the imposition of a third-tier penalty. *See SEC v. Opulentica, LLC*, 479 F. Supp. 2d at 331-332 (S.D.N.Y. 2007); *S.E.C. v. Forest Res. Mgmt. Corp.*, No. 09 Civ. 0903 (JSR), 2010 WL 2077202, at *2 (S.D.N.Y. May 18, 2010). Over a period of several months, Brenner misrepresented to escrow clients that he was a responsible escrow agent who would invest their funds in safe and liquid securities. Instead, he misappropriated funds to Individual X, his associates, and himself; used client funds to pay refunds to other clients; and misused funds to trade in highly risky derivatives. In doing so, he misled both clients and broker-dealers, to whom he represented that the money he was trading was his own. The SEC's complaint shows that he played a key role in a fraudulent scheme that caused losses of more than six million dollars to the escrow clients. Brenner has not opposed the SEC's motion and has made no showing that his financial condition supports a reduction of the penalty. The Court therefore orders Brenner to pay the maximum third-tier penalty of $150,000.00.

### III. CONCLUSION

For the foregoing reasons, the SEC's motion is GRANTED. Accordingly, the Court hereby imposes the following, in addition to the consent judgment already entered as to Brenner:

> (1) Disgorgement of ill-gotten gains Brenner received as a result of his violations of the federal securities law in the amount of $105,297.00, plus prejudgment

interest thereon in an amount to be determined upon receipt of a supplemental submission by the SEC; and

(2) Civil money penalties pursuant to Section 21(d)(3) of the Securities Exchange Act of 1935, 15 U.S.C. § 78u(d)(3), in the amount of $150,000.00.

The Clerk of Court is respectfully directed to terminate the motion, Doc. 45. The SEC is directed to file its supplemental submission only as to the re-calculation of prejudgment interest owed by Brenner no later than July 16, 2021.

It is SO ORDERED.

Dated: July 8, 2021
New York, New York

Edgardo Ramos, U.S.D.J.